1  TARA CHAND SINGHAL, Proceeding *Pro Per*
   2390 Crenshaw Blvd., Suite 239
2  Torrance, California 90501
   Telephone: (310) 787-1400
3  Email: chand@InternetPromise.com

4  Attorneys for Plaintiff
   Tara Chand Singhal (*in pro per*)

5

6

7

8              UNITED STATES DISTRICT COURT

9              CENTRAL DISTRICT OF CALIFORNIA

10 TARA CHAND SINGHAL, an          CASE NO. CV13-07857-DDP(PJWx)
   individual,
11                                 THREE-JUDGE COURT
                Plaintiff,
12      vs.
                                   **COMPLAINT FOR INJUNCTIVE**
13 THE EXECUTIVE BRANCH OF THE     **RELIEF**
   UNITED STATES GOVERNMENT;
14 THE UNITED STATES SENATE; THE
   UNITED STATES HOUSE OF
15 REPRESENTATIVES; AND THE
   DEPARTMENT OF COMMERCE
16 (COLLECTIVELY, "THE
   GOVERNMENT"),
17
                Defendants.
18

19

20

21        Plaintiff Tara Chand Singhal ("Chand"), proceeding *pro se*, for its

22 complaint against Defendants: (i) the Executive Branch of the United States; (ii)

23 the U.S. Senate; (iii) the U.S. House of Representatives; and, (iv) the Department

24 of Commerce (collectively, "the Government"), hereby alleges as follows:

25

26

27

28

FILED
CLERK, U.S. DISTRICT COURT
OCT 2 4 2013
CENTRAL DISTRICT OF CALIFORNIA
BY            DEPUTY

RECEIVED
CLERK, U.S. DISTRICT COURT
OCT 2 1 2013
CENTRAL DISTRICT OF CALIFORNIA
BY            DEPUTY

PAID
OCT 2 4 2013

# COMPLAINT FOR INJUNCTIVE RELIEF

## I.     Introduction

1.     During the years of debate as well as in the final enactment of the Leahy-Smith America Invents Act ("AIA"), powerful business interests have used the political process and have subverted the law-making process to steal intellectual property rights in many different ways that have belonged to the weaker sections of society.   The powerful business interests are some of the largest U.S. corporations and the weaker sections are the class of independent inventors.   This suit is being filed by an independent inventor *pro se* to redress these grievances.

## II.     Nature of the Action and Jurisdiction

2.     This court has jurisdiction as the case and controversy requires interpretation of the Federal Statutes in the Leahy-Smith America Invents Act ("AIA") of 2011 and as Plaintiff is located in this district.

## A.     What is at Stake Here?

3.     What is at stake here is the ability of independent inventors to enforce their patent rights against large corporations and these corporations indulging in name calling – in an attempt to demean those who enforce their patent rights, in public discourse, corrupting members of Congress, members of the federal judiciary, and even enlisting the President in that nefarious agenda.

4.     Name-calling is but one aspect of that nefarious agenda; the other

aspects include written and unwritten provisions in AIA to serve their nefarious agenda in an attempt to deprive the independent inventors of the rightful compensation from their inventions -- inventions that make America great.

### B.   Name Calling Has to Stop

5.    Numerous government officials, from their seats of authority in the executive, legislative, and judicial branches, have used the derogatory term, "patent trolls" to refer to any patent owner who has not been able or allowed to freely commercialize his or her patent(s) in the face of large corporations willfully infringing these patent(s) with impunity.  Many of these large corporations have an inordinate amount of access to and persuasion over these same government officials.

6.    Can the federal judiciary, a separate and co-equal branch of the U.S. Government be trusted to stop this nefarious agenda, redress this imbalance, and put a stop to this name-calling?

7.    The name calling must stop. Independent inventors do not want to stoop this level and create their own names to characterize the conduct of the public officials who have indulged in name calling.

### C.   Origin of Name Calling – Patent Troll

8.    Intel Corporation attorneys can claim credit for having coined the word "patent troll" to demean their litigation opponent in patent litigation, because they could not sue the opponent in a counter suit. Intel rather prefers to be sued by their business competitors like AMD, which they can sue back.  They

3

1    did not like the fact that they could not sue back and hence for that reason
2    characterized their litigation opponent a patent troll.

3

4        9.    Intel has 80% of the market share and AMD has 20% of the market
5    share in personal computer chips, but that did not stop Intel from bribing AMD
6    customers to not buy from AMD and thus inflict a serious harm in an attempt to
7    kill the only competitor they had.   For such an egregious and morally
8    reprehensible and abhorrent conduct Intel was fined over half a billion dollars by
9    the European Union.  For Intel to have dominant power in the marketplace and to
10   misuse that dominant power, I would call them a bully, a bully corporation.

11

12       10.   Intel is but one example that would fit the definition of a bully
13   corporation.  There are many others.  Such bully corporations would rather be
14   sued by only their business competition who they can sue back on frivolous
15   grounds to force a settlement.

16

17       11.   There are other business entities, including independent inventors
18   who do not compete with these bully corporations, but hold valuable patent rights
19   and have a right to enforce those patent rights even against these bully
20   corporations. They have been characterized by names such as non-practicing-
21   entities (NPE), patent trolls, and the like to describe them and to thus demean
22   them and their rights.

23

24       12.   The term patent troll has been used by so many people for so long,
25   including members of the media and members of the government, that it has
26   acquired a connotation similar to having an incurable disease in an attempt to
27   demean those who enforce their patent rights.

28

13.   An NPE, or a so-called patent troll, is the right vehicle for enforcement of patent rights of individual inventors who need to pool their resources against large bully corporations. NPE is a meaningless acronym because bully corporations themselves form separate corporations, also effectively NPEs, to enforce their patent rights.

14.   A patent and a right to enforce that patent are valuable, enforceable and unassailable rights, no matter whose name the ownership of the patent right is held in or resides.  That is the law of the land, and the Plaintiff would not let these bully corporations subvert those rights in courts, in Congress, in the media, and in public opinion.

15.   There is a nefarious agenda by the bully corporations to pollute public opinion against those who want to enforce their patent rights against these bully corporations and even go to the extent of fostering and supporting legislation in furtherance of that agenda.

16.   In pursuit of their nefarious agenda, the bully corporations have done more harm than good.  They are the lynchpins of a feudal society and have corrupted the processes of government by using their paid lobbyists via their Congressman to threaten senior members of the federal judiciary into creating an undefined role of gate-keepers against large damage awards.

17.   Another way to illustrate this nefarious agenda is a San Jose University professor created, and now has been widely used, terms such as Practicing Entity (PE) and so called Non-Practicing Entity (NPE). This distinction is as silly as a distinction between a house lived in by the owner and a house that is not owner occupied; a meaningless distinction regarding property rights,

1    created by those adverse to patent rights, in attempt to diminish and steal the

2    patent rights of others as part of an insidious agenda.

3

4          18.    Another example is U.S. House Rep. Bob Goodlatte, who proposed

5    recent AIA amendments in his Patent Reform-Discussion Draft 2013,

6    demonstrating his donors are viscerally against patent rights. *See*, his TROLL

7    AHEAD logo-image on his discussion draft copied here.

8

9

10

11

12



13          19.    It would be clear to most people that Rep. Goodlatte sold his

14    conscience to his handler's interest and his need to get re-elected.

15

16          20.    To further illustrate the bully conduct of a bully corporation against

17    independent inventors, SAP, a German-based business, is a recent example. SAP

18    is well known for their database product that powers the business operations of

19    many large corporations.

20

21          21.    Versata, a small business independent inventor company developed a

22    specialized addendum to the SAP database related to making hierarchical pricing

23    decisions. Versata was very successful in marketing this valuable addendum to

24    SAP and had applied and received a patent covering their invention.

25

26          22.    When SAP became aware of this innovation to the SAP database,

27    they just literally stole this technology from Versata and began marketing the SAP

28    version of that addendum and, in the process, killed Versata's small business.

23.     Versata, given this nefarious conduct of SAP, sued in Federal Court for infringement and damages and won an award of $300 million. SAP appealed and the issues of damage award, validity, and infringement were confirmed by the CAFC.

24.     Quoting from Dennis Crouch, a law professor and editor of the PatentlyO blog, "The Versata saga provides an important case history showing the power of the new post-grant review procedures before the USPTO and the Office's seeming new power to operate without fear of judicial review. However, over the next year, the Federal Circuit will have its opportunity to review the PTAB's controversial decisions."

25.     Dennis Crouch continues, "Versata's hierarchical pricing engine software had strong sales in the mid-1990s that ended when SAP and others added the component to their product line – an extra add-on was no longer needed. SAP indicated that its software replaced the need for Versata's add-on and actively discouraged customers from using Versata. Versata eventually sued SAP in 2007 and won a first jury verdict and then a second jury verdict (finding that SAP's "patch" did not cure the infringement) with a $300 million + damage award. That final decision was later affirmed on appeal."

26.     Then, on September 16, 2011, the day AIA was enacted, SAP filed with the USPTO an inter-parties reexamination action on the sole issue that the Versata claims are non-statutory under 35 USC §101. The PTAB, in their recent decision, repeated that same SAP lie that was part of SAP's request that is unsupported both in fact and law since the Versata claims indeed are statutory as the method steps are inseparably linked to a digital machine of a database and a

database server.

27.   Thus, the bully corporations have begun using AIA provisions created at their behest to corrupt the PTAB deliberations as so amply and clearly stated by Dennis Crouch, as quoted above.

28.   The conduct enumerated herein underlies the causes of action that has harmed the Plaintiff and continues to harm the Plaintiff.  Therefore, Plaintiff has standing to sue, as Plaintiff has been harmed and continues to be harmed as enumerated later here.

29.   Plaintiff has faced, faces, and continues to face this discriminatory conduct as has been outlined above in enforcing his patent rights.

30.   Plaintiff has received a patent on security of sales transaction terminals which is being infringed by a large number of companies in the retail industry. AIA effectively bars Plaintiff from suing more than one company at a time, even when there are common issues of law and fact, the operative legal principal for joinder of parties in a legal action.   35 U.S.C. § 299 in AIA expressly prohibits naming more than one party in a patent infringement lawsuit. Thus, AIA enacted Section 299 has intentionally created at the behest of bully corporations, severe time and cost burdens to enforce patent rights.

31.   In another patent infringement case, Plaintiff had sued a corporation when a large number of well-known companies had already taken licenses to the Plaintiff's invention.   This corporation refused to take part in multiple court-ordered mediation attempts, even to the day of the court trial.  This corporation misused discovery rules to discover Plaintiff's bank assets so that it can run the

Plaintiff out of funds to fight the corporation's bad-faith tactics and thus placing Plaintiff at a severe disadvantage when a possible settlement would have been on the order of one million dollars.

32.    Plaintiff, in an attempt to settle, as a court trial is a costly endeavor, traveled to the headquarters of the corporation for a face-to-face meeting with the COO to discuss settlement and apprised the COO that his corporation's conduct violated Section 30 of AIA and that the COO may be called to testify before Congress.  The COO ridiculed that possibility and refused to discuss a settlement. So much for significance of the AIA Section 30: "Sense of the Congress," for the bully corporations.

33.    When their bad-faith tactics against the independent inventor had not succeeded and they were faced in court by a determined inventor, determined to enforce his patent rights even against a bully corporation, the inventor had to face a biased attitude federal judge, who chose to call Plaintiff a patent troll in the court during trial.  The judge then refused to let Plaintiff's expert provide any testimony on damages based on reasonable royalty under the judge-created fiction that any evidence of damages based on reasonable royalty is not based on a sound theory of damages.

34.    When the federal judge was asked to clarify what would be a sound theory of damages, if damages based on reasonable royalty are not based on sound theory, the judge had no response.  He was viscerally driven to refuse to accept any evidence of damages based on reasonable royalty, knowing full well that there existed a well-developed law of reasonable royalty that had been refined by court rulings over many decades.

35.    Thus, the judge cut short the presentation of our side of the case and forced a settlement with the bully corporation.

36.    If that is not enough, USPTO *ex parte* reexamination procedures permit an unknown party to initiate frivolous and meritless *ex parte* reexamination proceedings with the sole intention to delay or derail patent enforcement efforts.

37.    A patent examiner in an *ex parte* reexamination decision against the Plaintiff, without a fear of PTAB and the CAFC, made a ruling that all of the claims at issue in the *ex parte* reexamination were anticipated by a single prior art patent and, in so deciding in a final rejection of the claims, broke long-standing legal precedents on anticipation and even violated the PTO's own Manual of Patent Examination Procedures (MPEP) provisions in a mal-intentioned mindset to invalidate the claims and do the bidding of a bully corporation.  That decision is currently being petitioned at CAFC by the inventor-owned corporation.

### D.    Leahy-Smith America Invents Act ("AIA")

38.    While one of the AIA's intended purposes was to facilitate filing of patent applications and thus place such disclosures in public domain, it intentionally created directly and indirectly multiple and insurmountable obstacles to the enforcement of patent rights in federal courts.

39.    An invention after creation has two distinct phases.  One phase is filing an application and prosecuting it to an issued patent.  A second phase, totally different and apart from the first phase, is to be able to enforce the issued patent against infringers. An issued patent is a worthless document without the ability to be able to enforce it during the limited life of its term.

40.     Powerful business interests have used the government processes against the weaker sections to not be able to enforce their rights and thus be able to steal the rights that lawfully belong to others without paying compensation.

41.     Creation of these insurmountable obstacles to patent enforcement was an intentional and deliberate conspiracy by the powerful business interests, members of Congress, judicial branch, and the executive branch as would be detailed in this complaint.

42.     Plaintiff approaches the Federal Courts of the United States for the redress of these grievances and the enforcement of these rights to be able to enforce patent rights.

### III.   THE PARTIES

43.     Plaintiff is a citizen of United States of America by naturalization, having been born in India and educated in India and the United Kingdom. Plaintiff is an electrical engineer and systems engineer by training and is also a non-practicing attorney in the State of California.

44.     Plaintiff, as an independent inventor, invents out of his life's passion and can invent new technologies in new areas that are not in the purview of employees of large corporations, as they generally invent, based on the direction of their employers to improve their existing product lines.

45.     Plaintiff is of the belief that other parties interested in the outcome of this case will intervene on behalf of the Plaintiff with offers to act as counsel.

46.    Plaintiff is an independent inventor and has been issued and has pending a large number of patent applications in many different and diverse technology areas that include: Solar Energy Systems; Vehicle Safety Systems; Cyber Security Defense, Remote User Authentication, Encryption: Personal Health; Wireless Mobile Devices, Human Interface in hand held devices; Advertisement on Internet and Mobile Devices, Educational Games, Secure Payment Systems, Id Theft Prevention systems; Diabetes Devices; E-commerce; Wireless Networks; Social networks; and Executive Compensation Management System in public companies.

47.    A large number of these patents and pending patent applications are on many different aspects of Cyber Security Defense that address critical needs of national security, including protection of the nation's critical infrastructure.

48.    Plaintiff performs a careful business and market analysis of the products, services, and their underlying technologies for each of his patent applications.   Plaintiff is of the belief, that many, if not all of his inventions would become foundations for not only launching new products but new industries.

49.    Independent inventors innovate from their free will and are not servants of either the government or the corporations (ruling class) and have no interest in innovating without a due reward, like anyone else, in proportion to the risk and rewards of their inventions.

50.    Receiving a patent is a complex, arduous, and a long process and is granted by a Commerce Department Agency, i.e., the USPTO.

51.    The defendants are the Executive Branch of the United States Government, the U.S. Senate, and the U.S. House of Representatives as they each have separately signed on the AIA and are directly and indirectly responsible for giving rise to the various causes of action identified in this complaint.    The Executive Branch is statutorily charged with the responsibility to issue and enforce regulations for the United States, and the U.S. Department of Commerce is responsible for the conduct of the USPTO and to foster innovation.

A.    **Basis of Causes of Action**

52.    At the heart of this complaint are these legal obstacles for the enforcement of patent rights that are being challenged as unconstitutional, in bad faith, and as part of conspiracy.    Seven different causes of actions are as delineated later herein.

53.    The nature of patent rights, for a limited time, are right to enforce which requires large funds up front to enforce.    Those rights that do not command large royalties are disrespected by bully corporations, as they know that the independent inventors would lack the wherewithal and resources to enforce these rights against their well-funded campaigns.

54.    The Leahy-Smith America Invents Act ("AIA"), Section 30, was written for that purpose but no remedies were provided to enforce rights granted to independent inventors in this section of AIA.    *See*, Fifth cause of action.

55.    The holders of these patent rights are private corporations that may be inventors or enforcement entities.    Against such conduct of bully corporationa,

13

1    there are enforcement entities that pool resources to enforce patent rights on

2    behalf of independent inventors and others such as universities.  Enforcement of

3    the patent rights and the value of these IP rights are uncertain, as these rights

4    depend on proving in a court of law the validity of patent claims and damages

5    against the campaign of bully corporations.

6

7          56.    Over the years, courts have created laws to protect these patent rights

8    against frivolous attacks by large and bully corporations.  However, these laws

9    are being misused by the paid army of lawyers of bully corporations, as well as

10   some members of federal judiciary themselves.

11

12         57.    Rights after patent issuance come in to the force when the patent is

13   being enforced.   Enforcement of these rights has included creation of new

14   doctrines as well as teaching on how the statute law should be properly applied.

15   These rights after patent issuance have included creation of landmark doctrines of

16   DOE, Hind Sight, Analogous art, TSM test to name some of them.  Even *KSR*

17   was in that vein, even though it was the most misapplied by those who dislike and

18   attack patents.

19

20         58.    The application of *KSR* "common sense" was carefully circumscribed

21   and limited by the Supreme Court.  That is, before the "common sense" can be

22   applied, there are three different clear and distinct preconditions before the

23   common sense can be applied, and those who did not like patents conveniently

24   jumped to common sense totally disregarding these three pre-conditions and using

25   the mere phrase "common sense" as a magic wand to defeat patent rights,

26   including members of the Federal Judiciary.

27

28         59.    There are seven different and distinct rights that have been subverted

that give rise to the following seven causes of action.  Each cause of action is followed by a Desired Relief section for that cause of action.

## IV.   LIST OF CAUSES OF ACTION

60.   **First Cause:**     Fictional Theory of Sound Theory of Damages (STD): - corruption of the federal judiciary by the U.S. Congress on behalf of bully corporations to hold that a reasonable royalty is not based on a sound theory of damages, irrespective of the size of the damages, to deprive patent owners of their due process rights in presenting damage evidence.

61.   **Second Cause:**     35 U.S.C. § 299 Leahy-Smith America Invents Act ("AIA"), the blanket stopping of joinder of defendant parties in a patent enforcement action, when joinder is based on common questions of law and fact, is vague and overbroad and thus unconstitutional.

62.   **Third Cause:**     35 U.S.C. § 299 Leahy-Smith America Invents Act ("AIA"), blanket stopping joinder of defendant parties in a patent enforcement action, when joinder is based on common questions of law, deprives patent right enforcing owners of their due process rights and thus is unconstitutional.

63.   **Fourth Cause:**     In furtherance of the conspiracy to deprive enforcement of patent rights of independent inventors, Congress on behalf of bully corporations' has indulged in demeaning and name calling conduct - patent trolls, as well as introduced legislation in furtherance of that nefarious agenda. Bully corporations – and their paid spokespersons are polluting civil public discourse and corrupting public officials.

64. **Fifth Cause:**      Leahy-Smith America Invents Act ("AIA"), SEC. 30.  SENSE OF CONGRESS, which states that it is the sense of Congress that the patent system should promote industries to continue to develop new technologies that spur growth and create jobs across the country which includes protecting the rights of small businesses and inventors from predatory behavior that could result in the cutting off of innovation - is fraud and deception on a grand scale against the independent inventors in creating phantom and unenforceable rights for the independent inventors, where these phantom rights are unable to stop predatory conduct of large corporations against independent inventors.

65. **Sixth Cause:**      Frivolous *ex parte* Reexamination filings by unidentified companies. When independent inventors enforce their patent rights, the Department of Commerce regulations permit frivolous and meritless filing of ex-parte reexamination requests without identifying which parties are filing these requests as a means to harass the patent owner and to derail their enforcement efforts.

66. **Seventh Cause:**    Intentional Misuse of *KSR* by the members of the federal judiciary who dislike patents and are against the rights of patent owners in harassing Plaintiff by threatening to hold the claims invalid under *KSR* common sense.

## V.   FIRST CAUSE OF ACTION

**Sound Theory of Damages (STD): - Corruption of Federal Judiciary**

67.   Plaintiff Chand realleges and incorporates paragraphs 1 through 66 as though fully set forth herein.

68.   STD is a Congress-created mischief when they abused the federal judiciary to support the interests of the powerful corporations against the interest of weaker sections.

69.   It is not lost on anyone that Republicans are the majority in the House and the Republican ideology is for a cap on damage awards, in the Federal Courts, for the benefit of Corporations.

70.   A threat of capping damage awards in the AIA that favor the corporations resulted in the Federal Judiciary assuming a new role of gate keeper against large damage awards.

71.   To fulfill that role and responsibility of the gate keeper, the Federal Judiciary created an unwritten and undefined law of "Sound Theory of Damages" to cap damage awards in a patent case.

72.   The Federal Judiciary has never articulated or defined in any case or even otherwise in any writing, the specifics or the parameters by which to judge what a "Sound Theory of Damages" is or would be.

73.   However, the courts have felt fit to apply that vague and undefined

17

Sound Theory of Damages and thus refused a witness to testify on any evidence of damages even if based on a sound theory of reasonable royalty, under the pretext of an assumed mandate to be a gate keeper for damage awards.

74.    Assuming that the set of facts that gave rise to the Sound Theory of Damages were very large and rare patent awards that were perceived to be not based on a Sound Theory of Damages, and a Sound Theory of Damages would serve to limit those damage awards, then this theory is simply not applicable to small damage awards.  But, the courts have felt it was appropriate to apply that vague, undefined Sound Damage Theory and refused to admit any evidence of damages even for small damages under that pretext.

75.    CAFC judges and, at their behest, other federal judges, have fashioned a new "gate keeper" role for the Federal Judiciary to keep out large damage awards in patent cases.  Under that newly assumed gate keeper role, the Federal Judiciary has chosen to eviscerate an entire history of historical precedents for damage awards based on a reasonable royalty and has replaced that with a fiction called "sound theory of damages."

76.    That "fictional sound theory of damages" makes it impossible for any independent inventor to prove damages when going against a corporation defendant in a patent infringement case, as damages based on a reasonable royalty are prima facie not a sound theory of damages; even if an award of damages is for a few millions dollars, such as an independent inventor is likely to seek.

77.    It is a cardinal principle of the U.S. Constitution that any law has to be precise enough so that it can be understood by people who have to abide by it, and, absent that precision, the law would be vague and thus unconstitutional.

That logic applies equally to civil law and judge-made law such as, Sound Theory of Damages in a patent case.

78.     Hence, for the reasons above, the court's ruling of applicability of unwritten, undefined Sound Theory of Damages for Plaintiff to abide by is simply absurd.   Hence, that conduct, since that conduct is inimical to the AIA and the sense of the Congress, has to be made public and broadcast to all of the interested parties in the USA.

79.     It is human nature that large damage awards in patent cases even though extremely rare they may be, fuel innovation and innovation spirit and capping or limiting damage awards would kill innovation.   A clear illustration of that human nature is the Mega lottery.   If the Mega lottery award was limited or capped to be under $10 million, how many would buy the lottery ticket?   A large lottery fuels large lottery sales as had recently happened, where the Mega lottery award was in the $600-700 million range.

80.     Hence, an inference can be drawn that the Federal Judiciary, in the interest of serving its Republican interests, has just assumed a new role of killing innovation and innovation spirit by killing any damage award even if based on a sound theory of reasonable royalty.

81.     Independent inventors innovate from their free will and are not servants of either the government or the corporations (ruling class) and have no interest in innovating without a due reward, like anyone else, in proportion to the risk and rewards of their inventions.

82.     Research In Motion Ltd. (RIM), a Canadian company, is a classic

19

example of how large bully corporations treat independent inventors.  That type of conduct had not stopped in spite of AIA Section 30, and Plaintiff has been a victim of such conduct well after passage of the AIA.

83.    The case of RIM that results in a negotiated settlement of $650 million dollars had provided the impetus for large corporations to push the Congress to cap damage awards.  What is lost here is the conduct of RIM against the independent inventor.  The independent inventor had repeatedly contacted RIM's management with an initial offer of settlement of $24 million.  It was RIM's conduct being a foreign (Canadian) corporation and a bully corporation outside the legal system of U.S. that had made the final settlement to $650 million when an injunction was imminent.

84.    Receiving a patent is a complex, arduous, and a long process and is granted by the Commerce Department Agency, the USPTO.  The Federal Judiciary has telegraphed the following unmistakable positions, from the Federal Judiciary class to the independent inventor class.

85.    The Court has carte blanche to rule any sound theory of damages as not a sound theory of damages without the judge being able to cite or even articulate what a sound theory is or would be.  The judge would see no problem in dismissing patent infringement cases under that pretext without proof of damages.

86.    The Court has carte blanche to rule any legislation illegal under the U.S. Constitution.  Given that carte blanche power, federal judges have the power to rule any patent invalid under the pretext of *KSR*, even though both *KSR*'s facts and the *KSR* ruling are clearly inapplicable to the facts of a case.

87.   Thus, the members of the Federal Judiciary have no hesitation in mocking the USPTO, an agency of the Department of Commerce, because they are ideologically against patents in the interest of protecting large and bully corporations.

88.   The Federal Judiciary is part of the "patent system" that Congress speaks of.   The set of facts that gave rise to the Sound Theory of Damages, were very large and rare patent awards that were perceived to be not based on a Sound Theory of Damages, and a Sound Theory of Damages would serve to limit those damage awards.

89.   Such a theory, if it does exist, is simply not applicable to small damage awards in the range of a few million dollars that an independent inventor would seek from a corporate infringer.   Since an independent inventor is not permitted to prove damages based on theories of reasonable royalty or even prior licenses, and he cannot prove damages on the theory of lost profits that leaves the independent inventor without a case and a remedy against infringement.

90.   Thus, the Sound Theory of Damages, applied without regard to the facts of the case thwarts the AIA and the Sense of the Congress, contained therein.

91.   **Relief Sought:**   There is a long history and ample body of law in ascertaining what a reasonable royalty is or should be. A reasonable royalty is proven in an adversarial system.   Therefore, the courts state in clear and unequivocal terms that reasonable royalty is and remains the sound theory of damages and that no obstacles, impediments and blocks can be placed in

presenting evidence related to reasonable royalty.

## VI.   SECOND CAUSE OF ACTION

**35 U.S.C. § 299 Leahy-Smith America Invents Act ("AIA") On Joinder of Parties in a Patent Enforcement Action is Overbroad And Vague**

92.    Plaintiff Chand realleges and incorporates paragraphs 1 through 91 as though fully set forth herein.

93.    35 U.S.C. § 299 Leahy-Smith America Invents Act ("AIA") on joinder of parties is Overbroad and Vague.  FRCP 20 is the only operative legal procedure for joinder of parties based on common issues of law and fact.

94.    Under this statute, joinder is not permitted without regard to the facts of the case and for any reason specifically for patent enforcement cases.

95.    Being applicable to all patent cases, without regards to the operative principle of litigating common issues of law and fact, and without regards to the facts of a case and the standing of the parties and the standing FRCP Rule 20 on joinder, the statute is overbroad and vague and thus unconstitutional.

96.    If the harm that was intended to be corrected by this statute was that in some rare cases with a large number of defendants, the defendants were not allowed adequate time to present their defense, under the practice of allocating equal court time to plaintiff and defendants, then that harm in those specific cases could easily have been corrected by allocating more time to the defendants.

97.    The statute created remedy of blanket stopping of any joinder for any reason irrespective of the facts of individual case, of this statute is exemplified by a Chinese proverb that says, if a person has a headache, the remedy ought not to be to chop off the head of the person. This statute on joinder does exactly that chop off the head and therefore, the statute on its face is overbroad and vague and thus unconstitutional.

98.    Being applicable to all patent cases, without regards to the operative principle of litigating common issues of law and fact, and without regards to the facts of a case and the parties and the FRCP rules on joinder, exceeds the authority of Congress and thus unconstitutional.

99.    **Relief Sought:**    The courts should hold 35 U.S.C. § 299 as being overbroad and vague as well as having exceeded the authority of the congress and thus unconstitutional.

## VII.  THIRD CAUSE OF ACTION
### 35 U.S.C. § 299 Leahy-Smith America Invents Act ("AIA") On Joinder of Parties in a Patent Enforcement Action Violates Due Process Rights

100.   Plaintiff Chand realleges and incorporates paragraphs 1 through 99 as though fully set forth herein.

101.   35 U.S.C. § 299 Leahy-Smith America Invents Act ("AIA") stopping joinder of defendant parties in a patent enforcement action, when based on common questions of law and deprives patent owners of their due process rights.

102.   Patent owners have the right to enforce their patent rights and by

23

placing damaging and prejudicial obstacles in that path to enforcement have deprived independent inventors of property rights without due process of law.

103.   Under this statute, joinder is not permitted without regard to the facts of the case and for any reason specifically for patent enforcement cases. A case is fact specific and based on law and equity between parties that a federal judiciary is alone capable of judging. Congress cannot pass a law that subverts that essential role of the judiciary and thus deprive IP owners of their due process rights.

104.   Being applicable to all patent cases, without regards to the operative principle of litigating common issues of law and fact, and without regards to the facts of a case and the parties and the FRCP rules on joinder, the statute violated due process rights and is thus unconstitutional.

105.   **Relief Sought:**   The courts should hold 35 U.S.C. § 299 unconstitutional as having deprived patent owners of their due process rights.

## VIII. <u>FOURTH CAUSE OF ACTION</u>
### Civil Conspiracy

106.   Plaintiff Chand realleges and incorporates paragraphs 1 through 105 as though fully set forth herein.

107.   Congress on behalf of bully corporations indulges in demeaning and name calling conduct - patent trolls.  Bully corporations have thereby polluted civil public discourse and corrupting public officials and judicial officials in furtherance of the conspiracy to deprive enforcement of patent rights of independent inventors by bully corporations.

108. This conspiracy is mischief created by bully corporations and calculated to deprive rights of patent owners of their rights and violates their due process rights.

109. **Relief Sought:**   The courts should hold, that calling a party enforcing their patent rights as a patent troll is legally actionable defamation and subject to an appropriate fine to discourage such demeaning behavior.

## IX.   FIFTH CAUSE OF ACTION
### Fraud

110. Plaintiff Chand realleges and incorporates paragraphs 1 through 109 as though fully set forth herein.

111. AIA Section 30 is fraud and deception on a grand scale against the independent inventors in creating phantom and unenforceable rights for the independent inventors, where these phantom rights are unable to stop the predatory conduct of large corporations against the independent inventors.

112. This country has made an express policy that encourages innovation, and enacted a recent legislation, aptly titled, America Invents Act (AIA) of September 16, 2011.  The AIA in Section 30 makes clear what the sense of the Congress is:

> SEC. 30. SENSE OF CONGRESS. It is the sense of
> Congress that the patent system should promote
> industries to continue to develop new technologies that
> spur growth and create jobs across the country which

includes protecting the rights of small businesses and inventors from predatory behavior that could result in the cutting off of innovation.

113.   The Federal Judiciary is an integral and essential part of the patent system, charged with the responsibility to enforce patent rights.

114.   **Relief Sought:**   The courts should hold that the conduct proscribed in AIA Section 30 is legally actionable and should create penalties and punitive damages that are reasonably necessary to deter such conduct against the independent inventors by large bully corporations.

## X.    SIXTH CAUSE OF ACTION
### Frivolous *Ex Parte* Reexamination Filings By Unidentified Companies

115.   Plaintiff Chand realleges and incorporates paragraphs 1 through 114 as though fully set forth herein.

116.   When independent inventors enforce their patent rights, the Department of Commerce regulations permit frivolous and meritless filing of *ex parte* reexamination requests without identifying which parties are filing these requests as a means to harass patent owners and to derail their enforcement efforts.

117.   The U.S. Department of Commerce has set procedures that enable a large bully corporation to file for frivolous *ex parte* Reexamination filings by unidentified companies.

118. **Relief Sought:**   The courts should hold that the filing of an *ex parte* request for reexamination for an issued patent by a party adverse to the interest of the patent owner, come accompanied with (i) a statement under oath that this request is grounded on good faith application of applicable patent laws and (ii) be signed by an executive of a corporation and the name of the executive and the corporation be identified.

## XI.   SEVENTH CAUSE OF ACTION
**Intentional Misuse of *KSR* By The Members of the Federal Judiciary Who Dislike Patents and are Against the Rights of Patent Owners in Harassing Plaintiffs By Threatening To Hold the Claims Invalid Under *KSR* Common Sense**

119.   Plaintiff Chand realleges and incorporates paragraphs 1 through 118 as though fully set forth herein.

120.   The body of common law on patents protects an issued patent and requires a clear and convincing evidence to defeat one.  *KSR* neither changed that clear and convincing standard, nor did it change the law of obviousness.  *KSR* merely amplified application of the Graham law of obviousness to the specific facts of a situation.  Only these specific facts gave rise to the *KSR* decision that articulated "common sense" of the person of ordinary skill in the art ("POSITA") driven inquiry.  *KSR* cannot be applied ignoring these specific facts of the case and taking *KSR* phrases "common sense" and "unpredictable results" out of context in which they were written is ignoring these specific facts.

121.   Properly reading *KSR*, before "common sense" of a person of ordinary skill in the art (POSITA) can even be considered as a factor of

obviousness inquiry, there are three sequential inquiry steps that have to be analyzed. First, there has to exist a known problem in the industry at the time of the invention that a POSITA is likely to be aware of that known problem. That is, the problem and the nature and scope of the problem has been publicly discussed and described in the trade literature. Second, that known problem must be able to be solved by a combination of known parts present in prior art references. Third, the problem can be solved by combining those known prior art parts working in known ways without any change or modification.

122. When all these three sequential inquiries have been conducted, then the fourth inquiry of "common sense" of POSITA comes into play, that is, would a POSITA combine the references using commonsense? Then, the last and final fifth step of *KSR*-driven inquiry is that even if all these four conditions are met, and if the combination yields "unpredictable results," then it would not be the "common sense" of POSITA to have combined the teaching of the prior art references.

123. The entire patent bar has been fixated on these last two steps of inquiry of "common sense" and "unpredictable results" and has conveniently and totally ignored the first three sequential pre-condition steps of inquiry that precede these final two steps of the *KSR*-driven obviousness inquiry. Without the first three steps of the obviousness inquiry, the last two steps would not even exist.

124. The history of human thought is driven by context in which those thoughts occurred. Without context it is a veritable jungle of human thoughts without any structure or organization. The context provides that structure and organization to the human thought. As an illustration, in economics, the first sentence on the first page of a book on economics states "assuming a rational

human being." There is no science of economics for irrational human beings and applying economic principles developed for rational human beings to irrational behavior would be to use the economics principles and theories out of context. The first three steps of the *KSR*-driven obviousness inquiry provide that important context to judge the last two steps of the *KSR*-driven obviousness inquiry.

125. Now, coming to the last two *KSR* inquiry steps, while everyone can understand the phrase "common sense" and "unpredictable result" from a *language* perspective, no one understands these phrases from a *legal* perspective. Even though these terms have legal ramifications, no one can even begin to define with any certainty, what "unpredictable results" and "common sense" mean. Hence, the patent bar makes these phrases mean whatever supports their respective adversarial positions, and, thus, create endless arguments.

126. **Relief Sought:**   The courts should hold that before *KSR* can even be cited, an analysis be presented on the application of the three preconditions of *KSR* common sense.

**PRAYER FOR RELIEF**

127. For injunctive relief and such other relief as the Court may find just and proper.

Respectfully submitted,

Dated: October 2 1, 2013     By:   _Tara Chand_

Tara Chand Singhal

Attorneys for Plaintiff
Tara Chand Singhal (*in pro per*)

29

PRIORITY MAIL
POSTAGE REQUIRED

U.S. POSTAGE
$8.90
PM 1-DAY
90503 0005
TORRANCE, CA
OCT 10 1713
08002327

UNITED STATES
POSTAL SERVICE.

PRIORITY
★ MAIL ★

PRESS FIRMLY TO SEAL

▣ DATE OF DELIVERY SPECIFIED *
📶 USPS TRACKING™ INCLUDED *
$ INSURANCE INCLUDED *
▣ PICKUP AVAILABLE
  * Domestic only

WHEN USED INTERNATIONALLY,
A CUSTOMS DECLARATION
LABEL MAY BE REQUIRED.



CERTIFIED MAIL

RECEIVED
CLERK U.S. DISTRICT COURT
OCT 21 2013
CENTRAL DISTRIC OF CALIFORNIA
                    DEPUTY

7013 1090 0001 6606 6257

FROM:

Tara-Chand Singhal Papa
c/o
Internet Promise Group LLC
2390 Crenshaw Blvd. Ste 239
Torrance CA 90501

TO:

The Clerk, Proper Civil
Federal Court, Central Distt.
312 N. Spring St
Los Angeles CA 90012

VISIT US AT USPS.COM®
ORDER FREE SUPPLIES ONLINE

EP14 July 2013
OD: 11.625 x 15.125



PRESS FIRMLY TO SEAL

♲ TYVEK® IS RECYCLABLE.
HDPE  ©2001 DUPONT™ AND TYVEK® ARE TRADEMARKS OF DUPONT.

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

### NOTICE OF ASSIGNMENT TO UNITED STATES JUDGES

This case has been assigned to District Judge _____ Dean D. Pregerson _____ and the assigned Magistrate Judge is _____ Patrick J. Walsh _____ .

The case number on all documents filed with the Court should read as follows:

## 2:13-cv-07857-DDP(PJWx)

Pursuant to General Order 05-07 of the United States District Court for the Central District of California, the Magistrate Judge has been designated to hear discovery related motions.

All discovery related motions should be noticed on the calendar of the Magistrate Judge.

Clerk, U. S. District Court

_____ October 24, 2013 _____
Date

By  APEDRO _____
Deputy Clerk

### NOTICE TO COUNSEL

*A copy of this notice must be served with the summons and complaint on all defendants (if a removal action is filed, a copy of this notice must be served on all plaintiffs).*

**Subsequent documents must be filed at the following location:**

| [x] Western Division | [ ] Southern Division | [ ] Eastern Division |
|---|---|---|
| 312 N. Spring Street, G-8 | 411 West Fourth St., Ste 1053 | 3470 Twelfth Street, Room 134 |
| Los Angeles, CA 90012 | Santa Ana, CA 92701 | Riverside, CA 92501 |

**Failure to file at the proper location will result in your documents being returned to you.**

**UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA**
**CIVIL COVER SHEET**

| I. (a) PLAINTIFFS ( Check box if you are representing yourself [X] ) | DEFENDANTS ( Check box if you are representing yourself [ ] ) |
|---|---|
| TARA CHAND SINGHAL Proceeding pro per | The Executive Branch Of The United States Government; The United States Senate; The United States House Of Representatives; And The Department Of Commerce (Collectively, "The Government"), |

| (b) Attorneys (Firm Name, Address and Telephone Number. If you are representing yourself, provide same information.)<br>TARA CHAND SINGHAL Pro se<br>2390 Crenshaw Blvd. Ste 239<br>Torrance, CA 90501<br>310 787 1400 | (b) Attorneys (Firm Name, Address and Telephone Number. If you are representing yourself, provide same information.) |
|---|---|

**II. BASIS OF JURISDICTION** (Place an X in one box only.)

[ ] 1. U.S. Government Plaintiff

[ ] 3. Federal Question (U.S. Government Not a Party)

[X] 2. U.S. Government Defendant

[ ] 4. Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES**-For Diversity Cases Only
(Place an X in one box for plaintiff and one for defendant)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | [ ] 1 | [ ] 1 | Incorporated or Principal Place of Business in this State | [ ] 4 | [ ] 4 |
| Citizen of Another State | [ ] 2 | [ ] 2 | Incorporated and Principal Place of Business in Another State | [ ] 5 | [ ] 5 |
| Citizen or Subject of a Foreign Country | [ ] 3 | [ ] 3 | Foreign Nation | [ ] 6 | [ ] 6 |

**IV. ORIGIN** (Place an X in one box only.)

[X] 1. Original Proceeding

[ ] 2. Removed from State Court

[ ] 3. Remanded from Appellate Court

[ ] 4. Reinstated or Reopened

[ ] 5. Transferred from Another District (Specify)

[ ] 6. Multi-District Litigation

**V. REQUESTED IN COMPLAINT: JURY DEMAND:** [ ] Yes [X] No (Check "Yes" only if demanded in complaint.)

**CLASS ACTION under F.R.Cv.P. 23:** [ ] Yes [X] No [ ] **MONEY DEMANDED IN COMPLAINT:** $ _____

**VI. CAUSE OF ACTION** (Cite the U.S. Civil Statute under which you are filing and write a brief statement of cause. Do not cite jurisdictional statutes unless diversity.)
Certain Statues and aspects of Leahy-Smith America Invents Act ("AIA") 2011 are unconstitutional as they deprive independent inventors and patent owners their due process rights in enforcing their intellectual property rights.

**VII. NATURE OF SUIT** (Place an X in one box only.)

| OTHER STATUTES | CONTRACT | REAL PROPERTY CONT. | IMMIGRATION | PRISONER PETITIONS | PROPERTY RIGHTS |
|---|---|---|---|---|---|
| [ ] 375 False Claims Act | [ ] 110 Insurance | [ ] 240 Torts to Land | [ ] 462 Naturalization Application | **Habeas Corpus:** | [ ] 820 Copyrights |
| [ ] 400 State Reapportionment | [ ] 120 Marine | [ ] 245 Tort Product Liability | [ ] 465 Other Immigration Actions | [ ] 463 Alien Detainee | [X] 830 Patent |
| [ ] 410 Antitrust | [ ] 130 Miller Act | [ ] 290 All Other Real Property | | [ ] 510 Motions to Vacate Sentence | [ ] 840 Trademark |
| [ ] 430 Banks and Banking | [ ] 140 Negotiable Instrument | **TORTS** | **TORTS** | [ ] 530 General | **SOCIAL SECURITY** |
| [ ] 450 Commerce/ICC Rates/Etc. | [ ] 150 Recovery of Overpayment & Enforcement of Judgment | **PERSONAL PROPERTY** | **PERSONAL PROPERTY** | [ ] 535 Death Penalty | [ ] 861 HIA (1395ff) |
| [ ] 460 Deportation | | [ ] 310 Airplane | [ ] 370 Other Fraud | **Other:** | [ ] 862 Black Lung (923) |
| [ ] 470 Racketeer Influenced & Corrupt Org. | [ ] 151 Medicare Act | [ ] 315 Airplane Product Liability | [ ] 371 Truth in Lending | [ ] 540 Mandamus/Other | [ ] 863 DIWC/DIWW (405 (g)) |
| [ ] 480 Consumer Credit | [ ] 152 Recovery of Defaulted Student Loan (Excl. Vet.) | [ ] 320 Assault, Libel & Slander | [ ] 380 Other Personal Property Damage | [ ] 550 Civil Rights | [ ] 864 SSID Title XVI |
| [ ] 490 Cable/Sat TV | [ ] 153 Recovery of Overpayment of Vet. Benefits | [ ] 330 Fed. Employers' Liability | [ ] 385 Property Damage Product Liability | [ ] 555 Prison Condition | [ ] 865 RSI (405 (g)) |
| [ ] 850 Securities/Commodities/Exchange | [ ] 160 Stockholders' Suits | [ ] 340 Marine | **BANKRUPTCY** | [ ] 560 Civil Detainee Conditions of Confinement | **FEDERAL TAX SUITS** |
| [ ] 890 Other Statutory Actions | [ ] 190 Other Contract | [ ] 345 Marine Product Liability | [ ] 422 Appeal 28 USC 158 | **FORFEITURE/PENALTY** | [ ] 870 Taxes (U.S. Plaintiff or Defendant) |
| [ ] 891 Agricultural Acts | [ ] 195 Contract Product Liability | [ ] 350 Motor Vehicle | [ ] 423 Withdrawal 28 USC 157 | [ ] 625 Drug Related Seizure of Property 21 USC 881 | [ ] 871 IRS-Third Party 26 USC 7609 |
| [ ] 893 Environmental Matters | [ ] 196 Franchise | [ ] 355 Motor Vehicle Product Liability | **CIVIL RIGHTS** | [ ] 690 Other | |
| [ ] 895 Freedom of Info. Act | **REAL PROPERTY** | [ ] 360 Other Personal Injury | [ ] 440 Other Civil Rights | **LABOR** | |
| [ ] 896 Arbitration | [ ] 210 Land Condemnation | [ ] 362 Personal Injury-Med Malpractice | [ ] 441 Voting | [ ] 710 Fair Labor Standards Act | |
| [ ] 899 Admin. Procedures Act/Review of Appeal of Agency Decision | [ ] 220 Foreclosure | [ ] 365 Personal Injury-Product Liability | [ ] 442 Employment | [ ] 720 Labor/Mgmt. Relations | |
| | [ ] 230 Rent Lease & Ejectment | [ ] 367 Health Care/Pharmaceutical Personal Injury Product Liability | [ ] 443 Housing/Accomodations | [ ] 740 Railway Labor Act | |
| [ ] 950 Constitutionality of State Statutes | | [ ] 368 Asbestos Personal Injury Product Liability | [ ] 445 American with Disabilities-Employment | [ ] 751 Family and Medical Leave Act | |
| | | | [ ] 446 American with Disabilities-Other | [ ] 790 Other Labor Litigation | |
| | | | [ ] 448 Education | [ ] 791 Employee Ret. Inc. Security Act | |

**FOR OFFICE USE ONLY:** Case Number: CV13-07857

CV-71 (09/13) | CIVIL COVER SHEET | Page 1 of 3

**UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL COVER SHEET**

**VIII.   VENUE**:  Your answers to the questions below will determine the division of the Court to which this case will most likely be initially assigned.  This initial assignment is subject to change, in accordance with the Court's General Orders, upon review by the Court of your Complaint or Notice of Removal.

| Question A:  Was this case removed from state court? | STATE CASE WAS PENDING IN THE COUNTY OF: | INITIAL DIVISION IN CACD IS: |
|---|---|---|
| ☐ Yes  ☒ No | ☐ Los Angeles | Western |
| If "no, " go to Question B.  If "yes," check the box to the right that applies, enter the corresponding division in response to Question D, below, and skip to Section IX. | ☐ Ventura, Santa Barbara, or San Luis Obispo | Western |
| | ☐ Orange | Southern |
| | ☐ Riverside or San Bernardino | Eastern |

| Question B:  Is the United States, or one of its agencies or employees, a party to this action? | If the United States, or one of its agencies or employees, is a party, is it: | | INITIAL DIVISION IN CACD IS: |
|---|---|---|---|
| | **A PLAINTIFF?** Then check the box below for the county in which the majority of DEFENDANTS reside. | **A DEFENDANT?** Then check the box below for the county in which the majority of PLAINTIFFS reside. | |
| ☒ Yes  ☐ No | ☐ Los Angeles | ☒ Los Angeles | Western |
| If "no, " go to Question C.  If "yes," check the box to the right that applies, enter the corresponding division in response to Question D, below, and skip to Section IX. | ☐ Ventura, Santa Barbara, or San Luis Obispo | ☐ Ventura, Santa Barbara, or San Luis Obispo | Western |
| | ☐ Orange | ☐ Orange | Southern |
| | ☐ Riverside or San Bernardino | ☐ Riverside or San Bernardino | Eastern |
| | ☐ Other | ☐ Other | Western |

| Question C: Location of plaintiffs, defendants, and claims? | A. Los Angeles County | B. Ventura, Santa Barbara, or San Luis Obispo Counties | C. Orange County | D. Riverside or San Bernardino Counties | E. Outside the Central District of California | F. Other |
|---|---|---|---|---|---|---|
| Indicate the location in which a majority of plaintiffs reside: | ☒ | ☐ | ☐ | ☐ | ☐ | ☐ |
| Indicate the location in which a majority of defendants reside: | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ |
| Indicate the location in which a majority of claims arose: | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ |

| C.1. Is either of the following true?  If so, check the one that applies: | C.2. Is either of the following true?  If so, check the one that applies: |
|---|---|
| ☐ 2 or more answers in Column C | ☐ 2 or more answers in Column D |
| ☐ only 1 answer in Column C and no answers in Column D | ☐ only 1 answer in Column D and no answers in Column C |
| Your case will initially be assigned to the SOUTHERN DIVISION. Enter "Southern" in response to Question D, below. If none applies, answer question C2 to the right. ➡ | Your case will initially be assigned to the EASTERN DIVISION. Enter "Eastern" in response to Question D, below. If none applies, go to the box below. ⬇ |

Your case will initially be assigned to the
WESTERN DIVISION.
Enter "Western" in response to Question D below.

| Question D: Initial Division? | INITIAL DIVISION IN CACD |
|---|---|
| Enter the initial division determined by Question A, B, or C above: ➡ | Westren |

**UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL COVER SHEET**

**IX(a). IDENTICAL CASES**: Has this action been previously filed in this court and dismissed, remanded or closed?   ☒ NO   ☐ YES

If yes, list case number(s): _____

**IX(b). RELATED CASES**: Have any cases been previously filed in this court that are related to the present case?   ☒ NO   ☐ YES

If yes, list case number(s): _____

**Civil cases are deemed related if a previously filed case and the present case:**

(Check all boxes that apply)   ☐ A. Arise from the same or closely related transactions, happenings, or events; or

☐ B. Call for determination of the same or substantially related or similar questions of law and fact; or

☐ C. For other reasons would entail substantial duplication of labor if heard by different judges; or

☐ D. Involve the same patent, trademark or copyright, and one of the factors identified above in a, b or c also is present.

**X. SIGNATURE OF ATTORNEY
(OR SELF-REPRESENTED LITIGANT):**  //Tara Chand//          DATE: October 21, 2013

**Notice to Counsel/Parties:** The CV-71 (JS-44) Civil Cover Sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law. This form, approved by the Judicial Conference of the United States in September 1974, is required pursuant to Local Rule 3-1 is not filed but is used by the Clerk of the Court for the purpose of statistics, venue and initiating the civil docket sheet. (For more detailed instructions, see separate instructions sheet).

Key to Statistical codes relating to Social Security Cases:

| Nature of Suit Code | Abbreviation | Substantive Statement of Cause of Action |
|---|---|---|
| 861 | HIA | All claims for health insurance benefits (Medicare) under Title 18, Part A, of the Social Security Act, as amended. Also, include claims by hospitals, skilled nursing facilities, etc., for certification as providers of services under the program. (42 U.S.C. 1935FF(b)) |
| 862 | BL | All claims for "Black Lung" benefits under Title 4, Part B, of the Federal Coal Mine Health and Safety Act of 1969. (30 U.S.C. 923) |
| 863 | DIWC | All claims filed by insured workers for disability insurance benefits under Title 2 of the Social Security Act, as amended; plus all claims filed for child's insurance benefits based disability. (42 U.S.C. 405 (g)) |
| 863 | DIWW | All claims filed for widows or widowers insurance benefits based on disability under Title 2 of the Social Security Act, as amended. (42 U.S.C. 405 (g)) |
| 864 | SSID | All claims for supplemental security income payments based upon disability filed under Title 16 of the Social Security Act, as amended. |
| 865 | RSI | All claims for retirement (old age) and survivors benefits under Title 2 of the Social Security Act, as amended. (42 U.S.C. 405 (g)) |